CLEMENTS *v.* RATLIFF.

(No. 6881 — Decided
September 19, 1986.)

Wadsworth Municipal Court.

*Stanley Clements, pro se.*
*William Love III,* for defendent.

KIMBLER, J. This matter came to be heard on the counterclaim of the defendant, the defendant having been granted summary judgment on the plaintiff's complaint.

The facts of the matter are as follows. On January 20, 1984, the plaintiff, H. Stanley Clements, parked his Vega in a parking lot owned by the city of Wadsworth. The plaintiff did not return for the vehicle, and on January 24, the Wadsworth Police ordered the defendant, Bruce Ratliff, to tow it. The vehicle was taken to the defendant's place of business.

The defendant is in the business of towing cars, having been self-employed as "Bruce's Towing" for approximately seven years. At the time the plaintiff's vehicle was towed, the defendant leased an outdoor lot where he stored vehicles. The defendant paid $600 a month for the lot, approximately half of which was paved. The defendant could store approximately twenty cars on the lot.

Other than lot rental and insurance, the defendant incurred no expenses as a result of storing towed vehicles. The plaintiff demanded the return of the car, but the defendant refused since the plaintiff had not shown proof that all costs due to the city had been paid, and had not paid the towing and storage charges.

The plaintiff's claim was dismissed by summary judgment before trial, leaving only the defendant's counterclaim to be heard. In his counterclaim, the defendant prays for the sum of $4 per day for storage, plus the expense of the tow. This amounts to more than $3,500. The parties stipulated that the value of the car was approximately $100.

A contract has been defined in Ohio as "an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." See *Lawler* v. *Burt* (1857), 7 Ohio St. 340, 349. Applying the above definition to the facts of this case, it is clear the parties never entered into a contract for the towing of the plaintiff's car by the defendant. There was never a demand or request by the plaintiff that the defendant tow his car. Therefore, the defendant must look elsewhere for his right to recover.

There are two possible avenues of recovery available to the defendant. First, there may be statutes that give him the right to recover. Second, he may be entitled to recover under a theory of quasi-contract, or unjust enrichment.

Two Ohio statutes give a tower a right to recover from the owner of a vehicle towed pursuant to a police order. They are R.C. 4505.101 and 4513.61.

R.C. 4505.101 provides that the owner of a repair garage or storage facility in which a motor vehicle with a value of less than $300 has been stored may obtain the title to the vehicle after the vehicle has been left at the facility for more than fifteen days. This procedure requires the execution of an affidavit setting forth certain information,

and the sending of a notice by certified mail to the last known address of the titled owner. If the owner fails to respond within fifteen days, the owner of the storage facility acquires title. At that point, the tower may sell the vehicle to recoup some or all of the expenses he has incurred. In this case, the above procedure was not followed.

The other procedure authorized by statute is set forth in R.C. 4513.61. Under that section, a car which has been towed from public property may be sold at auction provided that the chief. of police has notified the titled owner by certified mail of the location of the car and that the car will be sold if the owner does not claim it within ten days. R.C. 4513.61 further provides that if the owner claims the car after the notice has been mailed, he or she has to pay "any expenses or charges incurred in its removal or storage." If the owner does not claim the car after the notice has been sent pursuant to R.C. 4513.61, then the car can be auctioned off, and the proceeds used to pay the storage and towing charges. Since the defendant did not use the two sections cited above to remove the vehicle from his lot, or to force the transfer of title to the vehicle in order to sell it, the question then becomes what impact, if any, his failure to use these statutory remedies has on any possible recovery under a theory of quasi-contract.

The Ohio Supreme Court in the case of *Hughes* v. *Oberholtzer* (1954), 162 Ohio St. 330 [55 O.O. 199], set forth the theory of quasi-contract. In that case, it wrote at 335:

"However, by the weight of authority, even though the minds of the parties have not met as to some essential term of the contract, one who has furnished materials or labor may recover the reasonable value of the materials or services. The promise to pay such reasonable value is implied. This is not in reliance upon the contract or by way of enforcement of the contract. It is the enforcement of an equitable right through the fiction called quasi-contract. Though equitable in nature and origin, the right may be enforced at law.

"The purpose of the quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant. Thus, while equity might compel a return of the article involved, the obligation which is recognized and enforced in law is the obligation to pay the reasonable worth of the benefit received.

"The recovery in a quasi-contract action is based upon value and is imposed without the assent of the defendant to prevent such defendant from enriching himself at the expense of the plaintiff."

In this case, the theory of quasi-contract is the only theory under which the court feels that the defendant may recover on his counterclaim. However, the court feels that this right is limited by the failure of the defendant to pursue relief under the sections of the Revised Code cited above.

The court feels that the defendant has conferred a benefit on the plaintiff by towing and storing the vehicle. Although the plaintiff might disagree, the vehicle could not be kept on the city's property indefinitely. The city had a right to have it removed. The defendant, who is a professional tow truck operator, was certainly more qualified to remove the car than a person who does not possess his experience. Furthermore, there was a benefit to having it removed to a place of business. Had it been kept at the parking lot, it would have been more susceptible to vandalism.

The court does not feel, however, that the damages to be paid by the plaintiff are as calculated by the defendant. The defendant could have used either of the two sections cited above to secure

the removal and sale of the vehicle, or the transfer of the title of the vehicle to himself. He did not; instead, he chose to allow the vehicle to remain on his premises.

While the statutes do not, by their language, set forth an exclusive remedy for a person in the position of the defendant, the court feels that they limit the amount that he may obtain under a theory of quasi-contract. That amount is the per day storage charge of $4, for a period of thirty days, plus the towing charge of $30, which is what the defendant stated was the charge for the towing of the vehicle. The storage charge is calculated by using the formula set forth in R.C. 4505.101, which would have allowed the defendant to secure the title in thirty days from the date that he towed the vehicle. This time period is greater than the time period set forth in R.C. 4513.61, but the court believes that it is the more equitable time period to use, since a wait of fifteen days by the defendant to see if the plaintiff was going to come for the vehicle is reasonable. Once that period had expired, the title could have been transferred fifteen days later for a total of thirty days.

Although quasi-contract is an action at law, it is based on equity principles and, therefore, equity dictates the result to be reached. To allow the defendant to recover more than the amount set forth above would be inequitable. It would be allowing the defendant to recover for a service that he did not have to perform since he could have utilized the procedures outlined in R.C. 4505.101 or 4513.61 to have the car removed from his premises long before that point.

Therefore, the court grants judgment to the defendant on his counterclaim in the amount of $150 plus his costs herein, plus interest at the rate of ten percent per annum from the date of February 20, 1984.

*Judgment for Defendant.*